UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA H.,[1]

                              Plaintiff,                  Case # 23-CV-6216-FPG

v.                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Amanda H. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 13. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In August 2020, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 82, 99. She alleged disability since August 2020 due to several mental impairments. Tr. 99. In August 2022, Administrative Law Judge Connor O'Brien ("the ALJ")

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

issued a decision finding that Plaintiff is not disabled. Tr. 15-28. In March 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2020, her alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had severe impairments of major depressive disorder with anxious distress, anxiety disorder, and tension headaches. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels but with additional non-exertional limitations. Tr. 20. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 26. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 26-27. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 28.

### II. Analysis

Plaintiff asserts that remand is warranted on several grounds. The Court addresses each ground in turn.

#### a. Consistency Factor

Plaintiff first argues that the ALJ failed to properly apply the "consistency" factor when assessing the medical opinions in the record. ECF No. 7-1 at 14-22. The Court disagrees.

An ALJ's failure to explain the supportability and consistency of a medical opinion in the record is a procedural error. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's

decision despite the error. *Id.* Thus, even if an ALJ fails to explicitly evaluate the consistency and supportability factors with respect to a particular medical opinion, remand is warranted only if the reviewing court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). By contrast, if the reviewing court can "adequately 'glean' how the ALJ [implicitly] weighed the consistency and supportability factors," remand is not justified because the procedural error is considered harmless. *Davidia B. v. Comm'r of Soc. Sec.*, No. 21-CV-384, 2023 WL 5361000, at *5 (W.D.N.Y. Aug. 22, 2023).

In this case, even assuming that the ALJ failed to explicitly apply the consistency factor with respect to the medical opinions in the record, the Court can adequately glean how the ALJ implicitly weighed that factor amongst the opinions.

At bottom, the ALJ recognized that Plaintiff's depression and anxiety caused "fluctuating moods and symptoms" throughout the relevant period. Tr. 26. The ALJ attributed Plaintiff's anxiety and depression in significant part to financial issues and her "past work," which was complex and "stressful." *Id.* This conclusion finds substantial support in the record. Plaintiff herself routinely attributed her anxiety and depression to her work. For example, when Plaintiff was admitted to a partial hospitalization program in September 2020 due to her anxiety, depression, and suicidal ideation, she reported that her work conditions were a significant cause. Tr. 511. Plaintiff's therapy records similarly disclose the strong connection between her stressful work and her deteriorated mental condition. *See, e.g.*, Tr. 587, 593, 597, 599, 601, 604, 606, 607, 734, 735, 745. After Plaintiff left her stressful job, she continued to suffer from depression and anxiety due to her concerns over, among other things, her finances. *See* Tr. 777 (stating that "finances and having to pay bills has been the biggest trigger" for her); *see also* Tr. 789, 790, 792, 798, 800, 807.

As they related to work and finances, the ALJ believed Plaintiff's symptoms could be adequately addressed by "reducing the level of complexity [of her work], and the need for decision making, together with less stressful pace, changes in work setting and interactions." Tr. 26. Plaintiff made a similar point at the hearing. *See* Tr. 56 (noting that she gets overwhelmed if she is "given like a whole list of things that I know I can't complete with the day"). The ALJ's rationale is supported by some of the medical opinions. State agency consultants J. May, Ph.D., and L. Dekeon, Ph.D., agreed that Plaintiff's functional capacity was connected to the work setting she encountered: in a "low contact/low stress setting[]," she would be able to retain the ability "for a range of work-related tasks/activities." Tr. 89; *see also* Tr. 127. In this respect, the ALJ found the opinions of Dr. May and Dr. Dekeon persuasive. *See* Tr. 25.

As for lesser "situational stressors" in Plaintiff's life, like her social relationships, the ALJ concluded that Plaintiff could adequately overcome symptoms associated with those stressors with the aid of medication and her other "coping methods for stress." Tr. 24. Again, this conclusion finds support in the record. As therapy proceeded, Plaintiff discussed her successful use of various coping strategies when confronted by anxiety and depressive symptoms. *See, e.g.*, Tr. 733 (reporting that she was able to remedy "small panic attack" through coping methods like "setting a timer" and spending time with her "therapy dog"); Tr. 737, 738, 739, 740, 775, 777, 778, 784, 787, 789, 791, 792. Although Plaintiff's medication was routinely adjusted throughout the period, by January 2022 Plaintiff reported stabilization in her symptoms with her current medication regimen. Tr. 770, 806, 807, 809; *see also* Tr. 52 (noting that Plaintiff's psychiatrist has "been able to find a correct series of medication"). Consistent with this conclusion, psychiatric consultative examiner Adam Brownfeld, Ph.D., opined that Plaintiff had no limitations beyond a moderate limitation in her ability to regulate emotions, control behavior, and maintain well-being. Tr. 551.

From this evidence, the ALJ determined that Plaintiff had an "ongoing need for treatment" but possessed "better coping skills and insight into her conditions." Tr. 25.

In short, the Court can adequately glean why the ALJ found the opinions of Drs. Dekeon, May, and Brownfeld more consistent with the record than that of Lauren Giglia—Plaintiff's treating mental health counselor. *See* Tr. 817-19. While the former opinions suggested that Plaintiff could work so long as her job did not involve the sorts of triggers that significantly affected her mental health, Giglia's opinion claimed that Plaintiff could not even undertake the most basic of work tasks, including understanding "very short and simple instructions." Tr. 818. Therefore, even if the ALJ committed procedural error by failing to more robustly discuss his analysis of the consistency factor with respect to each medical opinion, the "substance of the regulation was not traversed," and remand is not justified on that basis. *Brianne S. v. Comm'r of Soc. Sec.*, No. 22-CV-261, 2023 WL 6225249, at *4 (W.D.N.Y. Sept. 26, 2023).

To the extent Plaintiff disputes the reasonableness of the ALJ's view of the record, *see* ECF No. 7-1 at 17-22, the Court is not convinced that such argument warrants remand. At most, the evidence Plaintiff cites demonstrates there was "a conflict in the record, one which the ALJ was entitled to resolve." *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021); *Gogos v. Comm'r of Soc. Sec.*, No. 18-CV-1188, 2020 WL 128445, at *3 (W.D.N.Y. Jan. 10, 2020) ("It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution."). One could read the record, as Plaintiff does, to support greater functional restrictions, like those identified by Giglia. Nevertheless, where the ALJ's findings are "reasonably supported by the record, [they] must be given conclusive effect even if the administrative record may also adequately support contrary findings on particular issues." *Tasha S. v. Comm'r of Soc. Sec.*, No. 20-CV-421, 2021 WL 3367588, at *5 (W.D.N.Y. Aug. 3,

2021) (internal quotation marks omitted). Here, the ALJ reasonably concluded that Plaintiff's functional limitations flowed from "situational stressors" that could be remediated through a less stressful work environment, with any remaining triggers addressed by her medication and coping methods. Tr. 24. This conclusion was not the product of "cherry picking" or the ALJ's lay opinion, as Plaintiff argues; it was a reasonable interpretation of the conflicting evidence supported by three medical opinions.

Remand is not warranted.

### b. Other Limitations

Plaintiff next contends that the ALJ failed to identify sufficient evidence to support several of the RFC restrictions.[4] The Court disagrees.

First, Plaintiff challenges the ALJ's finding that she could occasionally interact with coworkers, supervisors, and the public. ECF No. 7-1 at 23-25. Drs. Dekeon and May concluded that Plaintiff was moderately limited in her abilities to (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers and peers without distracting them or exhibiting behavioral extremes.[5] Tr. 93, 131. Their opinions support the ALJ's conclusion that Plaintiff could "occasionally interact with co-workers, supervisors, and the public." Tr. 20; *accord Ryder v. Comm'r of Soc. Sec.*, No.

---

[4] In addition, throughout her briefing, Plaintiff cites a variety of evidence that, in her view, supports greater social limitations. *See generally* ECF Nos. 7-1, 14. But as stated above, because the ALJ's reading of the record evidence finds substantial support in the record, the mere existence of contrary evidence cannot, standing alone, justify remand. *Gonzalez-Cruz v. Comm'r of Social Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) ("[U]nder the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position.").

[5] Dr. Dekeon also stated that Plaintiff could "handle brief and superficial contact" with others, Tr. 89, and Plaintiff argues that "superficial" contact is distinguishable from the "occasional" contact the ALJ identified. ECF No. 7-1 at 24. The Court does not find the distinction that Plaintiff draws persuasive, since Dr. Dekeon expressly found Plaintiff "moderately limited" in her social functioning in the function-by-function assessment. Tr. 92-93. The ALJ could reasonably rely on those specific findings.

18-CV-539, 2020 WL 5433459, at *5 (W.D.N.Y. Sept. 10, 2020) ("[A] limitation to only 'occasional' . . . contact with others has been found sufficient to account for moderate limitations in social functioning."); *Gwendolyn H. v. Kijakazi*, No. 22-CV-433, 2022 WL 19406189, at *8 (D. Conn. Dec. 16, 2022) (collecting cases).

Second, Plaintiff asserts that there was insufficient evidence to support the limitation that Plaintiff "can use judgement to make occasional decisions" and can make "occasional changes in work setting." Tr. 20; ECF No. 7-1 at 25-28. To the contrary, Drs. Dekeon and May opined that Plaintiff was not "significantly limited" in her ability to make "simple work-related decisions," Tr. 93, and Dr. Brownfeld found no evidence of limitations in Plaintiff's ability to make work-related decisions, Tr. 551. Plaintiff does not address these supportive medical opinions, but instead disputes the ALJ's overall view that she "was able to better manage her symptoms with coping skills and her medications." ECF No. 7-1 at 27. As stated above, however, this Court must give conclusive effect to the ALJ's reasonable construction of the record. *Tasha S.*, 2021 WL 3367588, at *5. Plaintiff has now shown that the ALJ erred in limiting her to occasional decision-making and changes in work setting.

Third, Plaintiff contends that the ALJ erroneously omitted restrictions relating to Plaintiff's concentration, despite having found her moderately limited in her ability to concentrate, persist, and maintain pace. ECF No. 7-1 at 28. This is inaccurate, however: the ALJ precluded Plaintiff from performing complex work or work requiring specific production rates. *See* Tr. 20. On their face, these restrictions accounted for Plaintiff's concentration difficulties, and Plaintiff fails to develop a meaningful argument to the contrary. *Cf. Nicholas D. v. Comm'r of Soc. Sec.*, No. 23-CV-52, 2024 WL 655599, at *6 (W.D.N.Y. Feb. 16, 2024) (noting that moderate limitation

9

concentration, persistence, and pace may be addressed through restrictions on complexity of the work and production rate).

In sum, remand is not warranted on the grounds raised by Plaintiff.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 17, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York